Weldon, J.,
delivered the opinion of the court:
In the petition it is averred that the decedent departed this life in the year 1821; that on the 12th day of August, 1891, the claimant was appointed administrator de bonis non of the estate of said decedent; that he was born in France in the year 1740; that he left France in 1763; and reached New Orleans in the year 1779; that he joined the volunteers when the Spaniards took possession of Florida and Pensacola, and in the year 1783 was appointed by the King of Spain commandant of the army and militia assigned to duty at the post of Ouachita, La., under the orders of Don Estovan Miro, governor general of the province of Louisiana; that for his service general grants of land.were made to him by said Miro; that among other grants is one dated February 22,1788, of the description, metes and bounds as follows:
“A tract of land of one square league situated in the district of Arcansas on the north side of the river Oacheta, at about two leagues and a half distant from the said river Oacheta, and understanding that this land is to be measured so as to include the site or locality known by the name of Hot Waters, as is besides expressed by the figurative plan and cer *120 tificate of the said surveyor Trudeau above-named, and, recognizing this mode of measurement, we approve these surveys.”
It is alleged that- said grant was made after a preliminary survey, and a certificate of possession was issued by tlie surveyor of tlie Province of Louisiana; tliat said decedent leased tlie “Hot Waters,” as tbey were afterward called, to Stephen P. Wilson in the 'year 1819; that the papers were misplaced and liave only been recovered within the last few years; that the said decedent sold and conveyed said land to one Narcisso Bourgeat, and the deed was recorded in 1833; that said Bour-geat retroceded said land to'said decedent, and said deed of retrocession was filed for record at Point Coupee on July 17, 1866. The petition then alleges the legal effect of the treaty of St. Ildefonso, concluded in the year 1800 between Spain and France and the treaty of Paris of April 30, 1803, between France and the United States; that in the year 1832, Congress passed an act (4 Stat. L. 506) reserving four sections of land embracing the Hot Springs; that the act of June 11,1870 (16 Stat. L.,. 149), and the judgment of the Court of Claims did not affect the title and rights of claimant, because said act did not attempt to give said court jurisdiction of the rights of petitioner ; that the defendants are in possession of a considerable portion ofthe property of petitioner, to wit, what is now known as “Hot Springs reservation,” embracing thereon the hospital of the “Army and Navy Hospital'”; that to that possession claimant does not object; that the defendants have leased the use of the waters to sundry persons contrary to the rights of the petitioner; that for the amount realized by defendants as rent for said waters petitioner brings suit; and that for sis years past the Government has realized the sum of $36,726.60 as rents, and for that amount claimant prays judgment.
The findings of fact may be briefly stated as follows:
The decedent Don Juan Filhiol departed this life in 1821; claimant was appointed administrator as alleged in said petition; said decedent was a native of France, and came to New Orleans in 1779, joined the volunteers when Spain took possession of Florida and Pensacola, in 1783 was appointed by the King of Spain commandant of the army and militia assigned to duty at the Post of Ouachita under the orders of Don Esto-van Miro, governor-general of the Province of Lousiana; that he received from said Miro the grant or instrument in writing *121 described as Exhibit B to said petition, which purports to be a grant of the land in controversy; that the land and particular surveyor of the Province of Louisiana gave to said decedent the certificate or instrument described in Exhibit D to said petition (which is claimed by petitioner as having the effect of putting said decedent in the actual possession of the land in suit); that in the year 1802 the said decedent sold to his son-in-law and in 1806 received from him a deed of retrocession as shown in Exhibit H of the petition. Aside from the legal effect of what might be presumed from the certificate of the surveyor, it does not appear that the said decedent of any of his heirs, tenants or assigns ever had actual possession of the land described in the grant from Miro to the said decedent.
The said decedent claimed said land, and after his death his heirs continued to claim title to it, until the bringing of this suit by claimant. In the year 1828 an agent of the heirs commenced suit in the Superior Court of the Territory of Arkansas in his own name. It does not appear that he had any title to the land, or any connection with the interest of the heirs, except that of agent. The suit was instituted under the act of 1824, and was dismissed by the court because of the failure of the plaintiff to file the grant under which he claimed. Between said time and 1841 the heirs, for the purpose of prosecuting their rights, placed the papers in relation to their claim in the hands of Itezin P. Bowie, who was a land agent, and who died in the year 1841. Shortly after his death search was made for the papers belonging to the heirs of said Filhiol, but they could not be found. About the year 1883 another search was instituted, which resulted in finding, among the effects of said Bowie, the papers' -upon which this suit is brought, and which appear at length in the pleadings and findings. In the year 1869-’70 the heirs of decedent caused to be introduced into the House of'Representatives a bill to confer jurisdiction on the Court of Claims to determine their right to the land in dispute; the bill failed to become a law. The parties in interest failed to assert any right under the provisions of the act of 1870 (16 Stat. L., 14) or the act of 1877, (19 Stat. L., 277) and were not parties to the judicial proceedings under said statutes.
The claimant is the duly appointed administrator of the estate *122 of Don Juan Filhiol by the District Court of the parish of Ouachita.
At the threshold of our inquiry we are confronted by three defenses affecting the jurisdiction of the court: First, the act of 1870 (16 Stat. L., 14), entitled “An act in relation to the Hot Spring’s reservation in Arkansas. ” The first section of said act is as' follows:
“ That any person claiming title, either legal or equitable, to the whole or any part of the four sections of land constituting what is known as the Hot Springs reservation in Hot Springs County, in the State of Arkansas, may institute against the United States in the Court of Claims, and prosecute to final decision, any suit that may be necessary to settle the same: Provided, That no such suits shall be brought at any time after the expiration of ninety days from the passage of this act, and all claims to any part of said reservation upon which suit shall not be brought under the provisions of this act within that time shall be forever barred ”.
Second. The findings show, that the defendants took possession of the land in controversy claiming the right of ownership, and have continuously held it, claiming it as the property of the Government, and that, therefore, if the United States had no title to, or right justifying possession, it was a wrong upon the part of the defendants; and any proceeding founded upon that taking, or incident to it, is an action sounding in tort, within the meaning of the act entitled “An act to provide for the bringing of suits against the Government of the United States.” (1 Sup. to R. S., 2d ed. p. 559; 24 Stat. L., p. 505.)
Third. As the alleged right to the rent did not accrue during the lifetime of said decedent, no power inheres to his administrator to maintain a suit for rent; but if any such right exists, it is in the heirs of said decedent and not in his administrator.
These defenses go to the right of the claimant to maintain this action, because of the want of jurisdiction in the court as to the subject-matter, and the disability of the claimant as administrator. If any of these defenses is well taken, it is decisive of the rights of claimant and the petition must be dismissed.
The act of 1870 was passed for the ■ purpose of settling the rights of the Government in and to the reservation of Hot Springs, and to accomplish the purpose of a complete settle- *123 meat tbe act provided that every person claiming title, either legal or equitable, should within a certain time institute proceedings for the purpose of settling and adjusting by judicial determination such claim. The words “legal or equitable” are of the broadest import in the law, and it is impossible to conceive of an interest having the semblance of a claim which is not embraced and comprehended in the words “legal or equitable.” The court had complete power to adjudicate and determine a claim, whether it was founded upon a legal estate in the lands, such as a court of law could recognize, or upon an equitable estate, such as would require the more subtle and effective powers of a court of chancery. If a title is not perfect, absolute, and unconditional, having incident to it all the requirements of a legal estate, it must necessarily fall within the broad signification of the term equitable estate; but if it is perfect, absolute, and unconditional, embracing a complete estate, then it is a legal title.
The statute provides that the suits should have the form of a bill in equity, thereby clothing the Court of Claims with all the powers incident to a court exercising as a joint proceeding all the powers and duties of a court of law and a court of chancery. The act in question did not lessen or increase the estate of parties claiming title either legal or equitable in the land in controversy. Such was not the purpose and intended effect of the law. The object was to create and establish a jurisdiction within which the claimants could institute proceedings against the sovereign, and, by virtue of that proceeding, settle for all time conflicting claims of all parties. Under the provisions of said statute five cases were commenced against the United States by parties claiming a title and interest in and to said reservation, which were decided adversely to the claimants, and which judgments were affirmed by the Supreme Court. (Hale et al. v. U. S., 10 C. Cls. R., 289; 92 U. S. R., 698.)
At the time of the passage of this act, to wit, on June' 11, 1870, Congress was not in ignorance of the claim of the Filhiol heirs, as the findings show, that prior to the passage of the act, there had been introduced into the House of Bepresenta-tives a bill to confer jurisdiction on the Court of Claims, to settle and determine the rights of claimant to one square league of land, in connection with persons who had located on said lands in derogation of the act of Congress. In reference *124 to the condition of tbe reservation as to conflicting claims and torts, we quote what the Supreme Court say in the opinion affirming the judgment of this court.
“The title to a well-known watering place in the State of Arkansas, called the Hot .Springs, now located in Hot Springs County, has been contested by a number of claimants for nearly half a century. * * *
“ In order to settle, if possible, the controversies which existed, and which seemed interminable, none of the parties having any regular Government title, and it being doubtful whether any of them were entitled thereto, Congress, on the 31st day of May, 1870, passed the following act:” (U. S. E., 698.)
It is most ably argued, both in oral statement and by printed briefs, that the title of Filhiol being, as it is claimed, a perfect grant from the Spanish Government was not intended to be embraced in the judicial in’oceeding authorized and contemplated by the act of 1870. It is true, as a constitutional and legal proposition, that Congress can not affect the title and ownership of property, so as to divest its rightful possessor, except in pursuance of the power of eminent domain; but it is perfectly competent on the part of Congress to prescribe and determine jurisdiction in courts, especially where the Government stands in the attitude or relation of a suitor. The citizen must in cases where the Government is defendant accept the jurisdiction of the courts of the United States with all the limitations prescribed by the laws conferring or amending jurisdiction.
It is true, as a matter of fact, that all the claims filed in the Court of Claims under the act of 1870 were claims founded upon imperfect titles, the claimants having, as was alleged, an equitable interest in the land, capable of maintaining their right to have decreed and adjudicated a perfect grant; but that fact does not necessarily give construction to-the statute to the extent of denying the jurisdiction of the court, to consider and determine the validity of claims founded upon a perfect title or legal estate. Without the statute of 1870, there was no jurisdiction in the Court of Claims to entertain a suit for any claim to the Hot Springs reservation; and to hold that the jurisdiction provided for, and contemplated by the provisions of the act, was to be confined exclusively to the consideration of imperfect or equitable claims would be to *125 bold that tbe greater and more consummate tbe right, tbe less tbe protection and remedy afforded by tbe statute. Tbe Court of Claims in tbe very able and exhaustive opinion of Judge Nott said:
“ In 1870 the Hot Springs of Arkansas bad been tbe subject of legal contention for thirty years, and every conceivable method which professional ingenuity could devise bad been resorted to to obtain, directly or indirectly, the adjudication of a court upon the rights of the parties. No one bad received a patent or pretended to have acquired tbe legal title, but each bad again and again insisted that be was tbe equitable owner of tbe property. At tbe same time tbe interposition of Congress bad been invoked for a confirmation of one or tbe other of tbe titles. With such precedent facts existing, Congress passed tbe £Act in relation to the Hot Springs reservation in Arkansas,’ June 11, 1870 (16 Stat. L. 149). It provides that ‘any person claiming title, either legal or equitable,’ may institute in this court ‘ any suit that may be necessary to settle the same;’ that such suits ‘ shall be conducted and determined according to tbe rules and principles of equity practice and jurisprudence in tbe other courts of tbe United States;’ that this court shall be ‘ invested with tbe jurisdiction and powers exercised by courts of equity so far as may be necessary to give full relief;’ that ‘separate suits asserting conflicting-rights’ ‘shall be consolidated and tried together,’tbe court being directed to ‘ determine tbe question of title’ and to grant ‘ all proper relief as between tbe respective claimants, as well as between each of them and tbe United States;’ and if tbe final decision be in favor of tbe defendants, tbe court ‘shall order such lands into tbe possession of a receiver;’ and, if its decision be in favor of a claimant, it shall ‘ proceed by proper process to put such successful claimant in possession,’ and that upon tbe filing of its decree with the Secretary of tbe Interior, be shall cause a patent to be issued to tbe party in whose favor such decree shall be rendered.” (10 C. Cls. B., 363, 364.)
Tbe statute of 1870 does not affect tbe estate of parties, neither increasing nor diminishing their extent, and tbe limitation of ninety days does not involve a forfeiture of title; but simply operates as a limitation upon tbe jurisdiction of tbe Court of Claims; a matter always within tbe power of Congress and subject to its discretion.
Tbe law intended to settle controversies as to tbe title to tbe “Hot Springs reservation” and for that purpose provided a limitation of ninety days, within which suit should be brought in tbe following words:
*126 “Provided, That no suit shall be brought at any time after the expiration of ninety days from the passage of this act, and all claims to any part of said reservation upon which suits shall not be brought under the provisions of this act within that time shall be forever barred.”
The statute having provided that as a subject-matter the court had jurisdiction of either legal or equitable titles, if the claimant’s decedent had as insisted a perfect and complete grant in fee simple, his claim founded on such title comes within the letter of the law, and the bar of ninety days applies with the same force to it as it did to the incomplete or equitable titles litigated under said act. It is true, neither this court nor the Supreme Court mention or discuss the question of legal title in their opinions, as such titles were not in fact in that proceeding; but the clause of the statute embracing legal' titles remains intact. The bar, operating as it did on legal titles still remains in force, and no statute of our jurisdiction has removed that bar.
The act of March, 1887, entitled "An act to provide for bringing suits against the Government of the United States” was not intended to reopen for litigation cases which were expressly barred by former statutes. It may have the effect to extend the jurisdiction of this court in other directions,- but it cannot be held as repealing by implication statutes providing a bar, which by the policy of the law was to continue through all time. Eegarding the act of 1870 as sufficiently broad to include the claim of the plaintiff, we hold that the present proceeding is barred under the last clause of the first section. It is not necessary to notice the other defenses urged upon the part of the defendants. The motion to reform findings is allowed; but as the changes do not affect in the opinion of the court the judgment heretofore entered, it is unchanged.